CAUSE NO. 04-14-0024-CR **1334-15**

IN THE COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

---

ORIGINAL A PETITION FOR DISCRETIONARY REVIEW

OF CAUSE NO. 04-14-0024-CR

FROM THE COURT OF APPEALS

FOURTH DISTRICT OF TEXAS

SAN ANTONIO, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 03 2015

Abel Acosta, Clerk

---

ON APPEAL FROM THE 81ST JUDICIAL DISTRICT COURT

La SALLE COUNTY, TEXAS

TRIAL CAUSE NO. 11-09-00041-CRL

---

MR. DESTYN DAVID FREDERICK

[PRO-SE APPELLANT]

VS.

THE STATE OF TEXAS

[APPELLEE]

FILED IN
COURT OF CRIMINAL APPEALS
(CCA)

NOV 03 2015

Abel Acosta, Clerk

---

Mr. Destyn David Frederick #01920865

The John B. Connally Facilities

899 FM 632

Kenedy, Texas 78119-4516

---

**ORAL ARGUMENT REQUESTED**

-i-

CAUSE NO. 04-14-0024-CR

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

---

A PETITION FOR DISCRETIONARY REVIEW

OF CAUSE NO. 04-14-0024-CR

FROM THE COURT OF APPEALS

FOURTH DISTRICT OF TEXAS

SAN ANTONIO, TEXAS

---

ON APPEAL FROM THE 81ST JUDICIAL DISTRICT COURT

La SALLE COUNTY, TEXAS

TRIAL CAUSE NO. 11-09-00041-CRL

---

MR. DESTYN DAVID FREDERICK
[PRO-SE APPELLANT]

VS.

THE STATE OF TEXAS
[APPELLEE]

---

COMES NOW, Mr. Destyn David Frederick, styled hereinafter as pro-se Appellant and respectfully presents this Petition for Discretionary Review (PDR) relating to the above-styled and numbered cause(s), and for good cause, the Appellant shows this Honorable Court the following enumerated premises:

-ii-

## TABLE OF CONTENTS

| | PAGES |
|---|---|
| **INDEX OF AUTHORITIES** ************************************* | -iv- |
| STATEMENT REGARDING ORAL ARGUMENT ************************ | -v- |
| STATEMENT OF THE CASE ************************************ | -v- |
| STATEMENT OF PROCEDURAL HISTORY ************************** | -v- |
| GROUND FOR REVIEW ************************************** | -1- |
| ARGUMENTS ******************************************** | 1 - 5 |
| PRAYER FOR RELIEF ************************************** | 5 |
| APPENDIX ********************************************* | (COURT"S OPINION) |

# INDEX AUTHORITIES

PAGES

BURKS V. UNITED STATES, 437 U.S. 1, 98 S.Ct. 2141 *************     5

CAIN V. STATE, 958 S.W.2d 404 ************************************     1

GREEN V. MASSEY, 437 U.S. 19, 98. S.Ct. 2151 ******************     5

In re WINSHIP, 397 U.S. 358, 90 S.Ct. 1068 *******************     5

JACKSON V. VIRGINIA, SUPRA *****************************************     5

JONES V. STATE, 944 S.W.2d 642 **********************************     2

RICHARDSON V. STATE, 879 S.W.2d 874 ***************************     5

ROUSSEAU V. STATE, 855 S.W.2d 673 *****************************     4

STONE V. STATE, 823 S.W.2d 375 *********************************     1,2

TEXAS PENAL CODE 19.02(b)(3) **********************************     4

## STATEMENT OF ORAL ARGUMENT

Appellant seeks ORAL argument because He concludes that He has suffered a great injustice at the trial and appellate level.

## STATEMENT OF THE CASE

Appellant was charged by a Grand Jury on September 1, 2011 in a Fourt (4) Count indictment. All offenses were alleged to have occured on or about June 13, 2011. (CR:1). The State waved the death penalty. Id. at 103. Before jury selection, the State elected to proceed to trial on the offense of Capital murder as alleged in Count 1. (RR.II:3-4). The Appellant plead not guilty before a jury. (CR:412) The jury returned a unanimous verdict of guilty to felony-murder on February 14, 2014. Id. at 424. Punishment was assessed by the jury at 30-yrs confinement within the Texas Department of Criminal Justice - Institutional Division, and a fine of $5,000.00. Id.

## STATEMENT OF PROCEDURAL HISTORY

Appellant filed a Motion for New Trial on March 12, 2014. In accordance to the juror's verdict and the court's ruling, the court entered judgment of conviction and sentence on March 27, 2014. (CR: 691; and 498-99).

Appellant filed a timely notice of Appeal on February 14, 2014. Id. at 675, and a Certificate of Appeal was filed February 12, 2014. Id. at 674.

The Fourth Court of Appeals AFFIRMED Appellant's conviction on September 9, 2015. A Motion to Extend Time to file Petition for Discretionary Review (PDR) was filed by the Appellant's [then] appellate attorney (Richard E. Langlois) on October 9, 2015.

Appellant now presents this His "timely" submitted Petition for Discretionary Review on this the **22** day of **October**, 2015pm.

— V —

## GROUND FOR REVIEW

"**THE** COURT OF APPEALS ERR'D IN LIMITING ITS REVIEW ON THE APP-
ELLANT'S INSUFFICIENCY OF THE EVIDENCE CLAIM AND HAS APPLIED
A MISAPPLICATION SURROUNDING THE FACTS OF THE APPELLANT'S CASE;
HENCE DENYING THE APPELLANT'S DUE PROCESS RIGHTS TO A FAIR AND
ADEQUATE REVIEW."

## ARGUMENTS AND AUTHORITIES IN SUPPORT
## OF SOLE GROUND FOR REVIEW

[NOTE]: Even though this is not a Ineffective Assistance of Counsel Issue, the Appellant asserts
that His appellate attorney (Richard E. Langlois) was biasly inefective for failing
to present "other" issues/grounds for reversal considerations, and as this Honorable
Court can see for itself on page 4 (at bottom) and top of page 5 of the COA's "OPINION",
Appellant's counsel was also ineffective for attempting to raise the "Accomplice Witness"
issue as a independent ground for review. Please know that the Appellant made extremely
diligent attempts to purusade His appellate counsel to raise "other" per-se reversal
issues for appellate review other than the lone issue presented in the Brief he submitted
in the Appellant's behalf, of course to no avail.,etc... The Appellant now respectfully
presents this His pro-se rebuttal to the COA's "OPINION."

"LIMITED REVIEW AND MISAPPLICATION OF THE FACTS"

Within this argument, the Appellant asserts that the Court

of Appeals (COA) err'd in limiting its review of the Appellant's

Insufficiency of the Evidence claim strickly to only "reviewing

evidence in the light most favorable to the verdict."

In the past, this Honorable Court stated that it emphasize

that in performing a sufficiency review, the COA are required

to give deference to the jury's verdict, examine all of the

evidence impartially, and set aside the jury's verdict if it

is contrary to the overwhelming weight of evidence as to be

clearly wrong and unjust. Cain v. State, 958 s.w.2d 404 (Tex.Crim.

App. 1997)(citing Clewis v. State, 922 s.w.2d at 129). A suffi-

ciency review is permitted by the Texas Constitution, Article

V, § 6. See also Stone v. State, 823 s.w.2d 375 (Tex.App.-

-1-

Austin 1994, no pet.) the Court stated:

> When conducting a sufficiency review, we do not review the evidence in the light most favorable to the verdict. Instead, we consider all the evidence equally.*** We will set aside a verdict for sufficiency if it is contrary to the overwhelming weight of the evidence as to be wrong and unjust." (In pertinent part only)

In the instant case and in accords with the above requisites, the Appellant would urge that the jury's verdct must be set aside because it is clearly wrong and unjust, because such a verdict clearly shocks the conscience and cannot stand. Jones v. State, 944 s.w.2d 642 (Tex. Crim. App. 1996).

More specifically, the trial testimony established at most that the Appellant had absolutely no knowledge or direct involvement with the murder of the Complainant. This contention is supported by the following facts, unlike the COA's misapplication of the actual facts as illustrated throughout its Opinion:

SUPPORTING FACT NUMBER ONE (1)

"SHOTGUN NOT SUPPLIED FOR MURDER"

While at the residence of the Appellant, Rigo Guerra and Marcus Serna (the "alleged" co-defendents) were in the Appellant's bedroom, in which Guerra saw a shotgun on the Appellant's bed. Appellant related to Guerra that His mother (Gloria Rodriguez) was selling the gun. After **making sure** the gun **wasn't loaded**, Appellant allowed Guerra to hold the gun, in which Guerra wanted to consult with his grandmother to see if she would purchase the gun for him. [See page 9 of Appellant's Appeals Brief].

This testimonial evidence clearly demonstrates that not only did

-2-

the Appellant present the gun to Guerra for **purchasing purposes**, but! upon giving it to Guerra, He made sure that its wasn't loaded. These facts clearly removes the Appellant from criminal intent of murder, for it was the Appellant's sole conscious desire to sell the gun, nothing else. [DARK BOLD MINE FOR EMHPASIS];

## SUPPORTING FACT NUMBER TWO (2)

### "NO KILLING WAS PLANNED OR KNOWN TO APPELLANT"

One of the Appellant's "alleged" co-defendants (Guerra) wanted to kill a innocent by-stander, in which Serna responded to Guerra: "...We're (Serna & Guerra) not going to do **anything stupid**." All of this took place **outside of the presence** of the Appellant. (RR 8, pg 102-113).

This evidence shows that killing someone was not part of the Appellant's plans. The evidence clearly demonstrates that the Appellant was not told and/or warned of Seran and Guerra's plans, for it is totally obvious that Serna and Guerra were plotting and planning things with **one another** behind the Appellant's back. [DARK BOLD MINE FOR EMPHASIS]; and

## SUPPORTING FACT NUMBER THREE (3)

### "THE APPELLANT WALKED AWAY"

After **agreeing** only to steal a few tangible items from the Complainant's garage, the Appellant saw that Serna and Guerra were about to force their way into the Complainant's home, He (the Appellant) knew that He didn't want to have anything to do with actually breaking into the Complainant's home or hurting anyone, therefore He **walked**

-3-

**away** from Serna and Guerra and walked out of the Complainant's garage "before" the forced entry transpired, in which He later learned that the Complainants had been shot. Id. at pg 114-123.

This evidence clearly shows that the Appellant did not **act as a party** by planning and anticipating the burlary and murder of the Complainant. [DARK BOLD MINE FOR EMPHASIS].

These facts within themselves openly illustrates that the COA failed to apply the correct review and legal analysis in deciding that the evidence was sufficient to establish Appellant's guilt as a party to felony-murder.

Finally, the COA failed to address within its entire "OPINION" any of the the requisites outlining the elements for felony-murder. This Honorable Court has stated that the difference between Capital and felony murder is the culpable mental state of the defender. This Court has said that capital murder required the existence of an "intentional cause of death" while felony-murder states that "the culpable mental state for the act of murder is supplied by the mental state accompanying the underlying felony. Rousseau v. State, 855 s.w.2d at 673 (Tex.Crim.App. 1993). However, the inquiry does not end with a finding that the Appellant possessed the requisite culpable to commit the underlying felony. In order to find that the Appellant is guilty of felony-murder, the jury must find that the Appellant committed "an act clearly dangerous to human life." (See Texas Penal Code, § 19.02(b)(3).

In the instant case, a review of the testimony in this case reveals that the State failed to prove that the Appellant "intended" the death

-4-

of the Complainant or committed an act clearly dangerous to human life.

The Court in In re Winship,397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the Court held that the Due Process of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. 90 S.Ct. at 1073. See also Richardson v. State,879 s.w.2d 874 (Tex.Crim.App.).

As mentioned earlier, the COA faild to address any of these requisites while reviewing the Appellant's case, nor did they apply them, hence denying Appellant a proper and adequate review.

Finally, the Appellant contends that the evidence and testimony in this case falls short and is insufficient to meet the minimum Due Process requirements of the Fourteenth Amendment to the United States Constitution. Jackson v. Virginia,supra. The evidence is insufficient to support the conviction and a judgment of acquittal should be entered. Burks v. United States,437 U.S.1, 98 S.Ct 2141, 57 L.Ed.2d 1; and Green v. Massey,437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15.

### PRAYER FOR RELIEF

**WHEREFORE PREMISES ARE CONSIDERED**, the Appellant **PRAYS** that this Honorable Court GRANT this PDR by finding that the COA's assessment of His sufficiency of evidence issues were not properly addressed, and REMAND this case back to the District Court for further disposition and/or Reverse this conviction and acquit the Appellant.

[EXECUTED ON THIS THE 22 nd DAY OF OCTOBER, 2015]

-5-

Respectfully submitted,

Mr. Destyn. D. Frederick #1920865
The Connally Facilities
899 FM 632
Kenedy, Texas 78119-4516

[APPENDIX "COURT OF APPEALS OPINION" ATTACHED HERETO]



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00246-CR

Destyn David **FREDERICK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 11-09-00041-CRL
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Jason Pulliam, Justice

Delivered and Filed:  September 9, 2015

AFFIRMED

Destyn David Frederick was found guilty by a jury of felony murder and sentenced to thirty years' imprisonment. On appeal, Frederick challenges the sufficiency of the evidence to support his conviction, asserting: (1) the evidence is insufficient to corroborate the testimony of an accomplice witness; and (2) the evidence is legally insufficient to support the jury's finding that Frederick was guilty of felony murder. We affirm the trial court's judgment.

## BACKGROUND

Although a grand jury returned a four count indictment against Frederick, the State elected to proceed to trial on only one count charging Frederick with the capital murder of Israel Casas. The State waived the death penalty.

On the night Mr. Casas was murdered, Frederick admitted he accompanied his friends Rigo Guerra and Marcus Serna to Mr. Casas's home. Guerra and Serna forced their way inside the home, and Guerra shot and killed Mr. Casas. At the conclusion of the evidence, the trial court submitted a jury charge on capital murder and the lesser included offenses of felony murder and burglary of a habitation. The jury charge included instructions on the law of parties and the necessity for accomplice witness testimony to be corroborated. The jury found Frederick guilty of felony murder, and Frederick appeals.

## ACCOMPLICE WITNESS

In his first issue, Frederick contends the evidence is insufficient to corroborate Serna's testimony as an accomplice witness. The record is undisputed that Serna was an accomplice witness as a matter of law, and the jury was so charged.

Article 38.14 of the Texas Code of Criminal Procedure states:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). We evaluate the sufficiency of corroboration evidence under the accomplice-witness rule by first eliminating the accomplice testimony from consideration and then examining the remaining evidence to see if it tends to connect the accused with the offense committed. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Perez v. State*, 437 S.W.3d 610, 616 (Tex. App.—San Antonio 2014, no pet.).

To satisfy the rule, the corroborating evidence is not required to prove the defendant's guilt beyond a reasonable doubt by itself. *Malone*, 253 S.W.3d at 257; *Perez*, 437 S.W.3d at 616. Instead, the corroborating evidence "must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect the accused to the offense." *Malone*, 253 S.W.3d at 257 (internal citations omitted); *see also Perez*, 437 S.W.3d at 616. No set amount of evidence is required to satisfy the accomplice-witness rule, and each case is judged on its own facts. *Malone*, 253 S.W.3d at 257; *Perez*, 437 S.W.3d at 616. "[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257. A defendant's mere presence at the scene of the crime, however, is insufficient to corroborate accomplice testimony. *Id.* "[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), [we] defer to that view of the evidence chosen by the fact-finder." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

In this case, Frederick voluntarily gave two statements to investigators about the burglary and shooting. Both statements were read to the jury. In his first statement, Frederick admitted he gave Guerra the shotgun used in the murder. Although Frederick stated he allowed Guerra to take the shotgun because Guerra intended to purchase it, we defer to the jury's evaluation of the credibility of Frederick's stated reason for supplying the shotgun. We simply note Frederick's provision of the shotgun is evidence linking him to the commission of the crime.

In his second statement, Frederick admitted he went with Guerra and Serna to the Casas' home. The evidence also included the testimony of investigating officers establishing a forced entry into the Casas' garage, and a can of soda was recovered from the hood of a car in the garage. Because DNA testing showed Frederick's DNA could not be excluded as the source of the DNA found on the can of soda, this evidence also linked Frederick to the commission of the offense.

Finally, a pair of latex gloves were found in a backyard in proximity to the shotgun used to murder Mr. Casas. A box of latex gloves was also found in Frederick's truck, and Frederick's DNA could not be excluded as the source of DNA on a latex glove found under the driver's seat of Frederick's truck.

Because the foregoing evidence tends to connect Frederick with the commission of the crime and proves more than just his mere presence at the scene, the evidence is sufficient to corroborate Serna's testimony.

## LEGAL SUFFICIENCY

In his second issue, Frederick contends the evidence is legally insufficient to support the jury's finding that he was guilty of felony murder.

A.    Standard of Review

In assessing the legal sufficiency of the evidence to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Louis v. State*, 393 S.W.3d 246, 249 (Tex. Crim. App. 2012) (internal citations omitted). In applying this standard, we defer to the jury's credibility and weight determinations. *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). In addition, juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* at 16. Although Frederick raises a separate challenge under the accomplice-witness rule, "[w]e do not use the accomplice witness rule in evaluating the sufficiency of the evidence." *Winfrey v.*

-4-

*State*, 393 S.W.3d 763, 770 (Tex. Crim. App. 2013). "We simply review all of the evidence in the light most favorable to the verdict." *Id.*

B.    Summary of Evidence

Viewing the evidence in this case in the light most favorable to the verdict, Frederick admitted he was with Guerra and Serna when Israel Casas was murdered. Serna was offered a deal by the State and testified at Frederick's trial. After spending several hours together, Frederick, Guerra, and Serna were sitting in Frederick's truck and discussed going to break into a house and see what they could find. Guerra suggested they should have a gun for protection. In response to this suggestion, Frederick stated his mother had a shotgun she was trying to sell. Frederick then went inside his house and handed the shotgun through an air conditioning vent to Guerra, who was waiting outside. After Guerra returned to Frederick's truck with the shotgun, Frederick exited his house through the front door and returned to the truck.

The three men drove to Serna's house because he had a box of shotgun shells. Upon arriving at his house, Serna retrieved the box and handed it to Guerra, who removed three or four shells. After returning the box to its original location, Serna went inside his house and retrieved three pairs of disposable latex gloves. Upon returning to Frederick's truck, Serna handed Frederick and Guerra a pair of the gloves to avoid leaving fingerprints anywhere. Frederick then drove to a location near a water tower where he left his truck hidden under a carport to avoid it being traced to their intended burglary. The three men put the gloves on before exiting the truck.

The three men then began walking toward a light on a ranch when they encountered a Gator, which was later described as a heavy-duty four-seater golf cart or ATV, with its key in the ignition. After driving the Gator to a building, Guerra and Serna exited the Gator and crept to the front of the building where they saw a woman smoking a cigarette. Although Guerra told Serna he wanted to kill the woman, Serna told him no. Guerra and Serna then returned to the Gator, and

- 5 -

the three men drove to another house where all three men exited and approached the house. Either Guerra or Frederick forced their entry into a garage from a carport. Because they did not find anything of value in the garage, they began discussing whether to leave or go inside the house. Serna believed Guerra grabbed a soda from a refrigerator in the garage, took a drink, and returned it to the refrigerator. Serna did not recall Frederick drinking a soda.

When Guerra decided to enter the house, Serna followed him while Frederick walked out of the garage. After forcing their entry into the house, Guerra shot Mr. and Mrs. Casas. The evidence is undisputed that Mr. Casas died as a result of a gunshot wound to his face.

After the shots were fired, Guerra and Frederick ran out of the house and returned to the Gator. All three men drove back to Frederick's truck and left the Gator where the truck was previously parked. After driving around in the truck for twenty minutes, Guerra suggested they rob a gas station. Guerra exited the truck and told them to pick him up behind some apartments. Instead, Frederick drove to an alley behind Serna's house where they left the truck, walked to the street, and saw multiple police cars at the gas station. As they began to return to the truck, Frederick and Serna saw officers with a spotlight on the truck, so they ran to a different location. Frederick called his mother and was apprehended when she arrived to pick him up. Serna was apprehended shortly thereafter in the same general location.

C.    Analysis

As previously noted, Frederick was found guilty of felony murder. With regard to this offense, the jury was charged:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about June 13, 2011, in La Salle County, Texas, the defendant, Destyn David Frederick, either acting alone or as a party thereto as hereinbefore defined, did then and there commit or attempt to commit felony, to wit: burglary of a habitation and in the course of and in furtherance of the commission, or in immediate flight from the commission of said felony, he either acting alone, or as a party thereto as hereinbefore defined,

- 6 -

committed or attempted to commit an act clearly dangerous to human life, to wit: shooting Israel Casas with a firearm, you will find the defendant guilty of the lesser included offense of felony murder.

*See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). The jury charge included an instruction on the conspiracy theory of parties which permitted the jury to find Frederick criminally responsible for felony murder if: (1) he conspired with Guerra and Serna to commit the offense of burglary of a habitation; (2) Guerra or Serna committed the felony of murder in furtherance of the burglary; and (3) the murder was a felony Frederick should have anticipated as a result of carrying out the conspiracy. *Id.* at § 7.02(b).

Viewing the evidence in the light most favorable to the jury's verdict, Frederick, Guerra, and Serna discussed committing a burglary. Frederick supplied Guerra with the shotgun to be used during the burglary.[1] Frederick and the other men put on gloves in an effort to conceal any fingerprints. Frederick, Guerra, and Serna forced their entry into the Casas' garage. Frederick's DNA could not be excluded as the source of the DNA found on the soda can left on top of the car in the garage. By supplying Guerra with the gun for which Serna provided shells, Frederick could have anticipated Guerra using the gun to shoot someone. *See Flores v. State*, 681 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex. Crim. App. 1985) (noting defendant could have anticipated victim being shot in furtherance of conspiracy to commit burglary because defendant knew co-conspirator had a gun). Therefore, the evidence is legally sufficient to support the jury's finding that Frederick was guilty of felony murder.

---

[1] In discussing the law of parties in his brief, Frederick cites *Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012), and argues, "*Gross*'s conviction and appellant's conviction both involve a legal and factual determination of whether they were culpable for the death of the victims as a party." Frederick notes the court in *Gross* held the evidence insufficient to convict the appellant as a party. 380 S.W.3d at 188-89. In *Gross*, however, the shotgun used in the murder was located in the truck the appellant was driving, but the appellant never handed the gun to the person who shot the victim. 380 S.W.3d at 183. In the instant case, however, Frederick admitted he gave Guerra the shotgun used in the offense. In addition, Serna testified about the discussions he had with Guerra and Frederick regarding the plan to engage in burglaries, while no evidence of any discussions between the appellant and the shooter was presented in *Gross*.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH